# In re Estate of Hugh Bellas, deceased.   Appeal of Clara V. Ruthven.

*Will—Construction of—Fee simple estate—Life estate—Executory devise.*
The testator by his will directe ' as follows: "As regards the residue of my real and personal estate not above disposed of, I devise and bequeath it to my three daughters Eliza, Ann and Amelia, in fee, as tenants in common, viz., share and share alike, to be by my executors divided among them fairly, either in the realty, if practicable, or in the proceeds of sale thereof; and I request my executors, in dividing and appropriating the said residue, to require of my said daughters that their respective daughters shall receive of my estate, as far as practicable, severally, about double the amount that my said daughters' sons receive severally." *Held,* (1) that the language used by testator subsequent to the devise of the fee amounts to no more than the expression of a desire, and it is therefore inoperative; (2) that it did not create an executory devise giving a life estate to the daughters, and a devise over to their sons and daughters; (3) that the three daughters took an absolute estate in fee simple.

Argued May 25, 1896.    Appeal, No. 83, July T., 1895, from decree of O. C. Northumberland Co., Feb. T., 1892, No. 49, dismissing exceptions to report of auditor.  Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Affirmed.

Exceptions to report of auditor.

The auditor, George B. Reimensnyder, Esq., reported as follows:

Your auditor finds the following facts from the evidence produced· before him:

First. Hugh Bellas died on or about the 26th day of October, A. D. 1863, having made his last will and testament, which was duly proved before the register of wills. . . . .

Second. That by the tenth section of the last will and testament of said Hugh Bellas, deceased, it was provided as follows: "10. As regards the residue of my real and personal estate not above disposed of, I devise and bequeath it to my three daughters, Eliza, Ann and Amelia, in fee, as tenants in common, viz: Share and share alike (subject to the payment of my debts and funeral expenses and expenses of administration and expenses of my real estate), to be by my executors divided

among them fairly, either in the realty, if practicable, or in the proceeds of sale thereof, and request my executors in dividing and apportioning the said residue to require of my said daughters that their respective daughters shall receive of my estate as far as practicable severally about double the amount that my said daughters' sons receive severally."

Third. That said Hugh Bellas, the testator, died leaving to survive him the three daughters named in the tenth clause of the will, two of whom were then living, and two of whom, viz, Amelia and Ann, were then widows, and two of whom have since died, leaving at present the following persons as heirs of the estate:

1st. Eliza Florence, intermarried with Dr. Lineaweaver, who has since died, daughter of Eliza, who was intermarried with Charles Pleasants, both of whom are deceased, the said Eliza Bellas Pleasants having died intestate.

2d. Esther B. Brisben, intermarried with F. B. Gowen, who has since died, William M. Brisben, Horace Brisben, who has since died, Hugh Bellas Brisben, who has for his trustee, The Fidelity Insurance, Trust and Safe Deposit Company, children of Amelia Brisben, who is dead.

3d. H. Bellas Rodrigue, Clara V., intermarried with James A. Ruthven, who has since died; Florence V., intermarried with F. G. Tisdall; Aline, intermarried with John Gilbert; Aristide Rodrigue, who has since died intestate, leaving to survive him two children, viz, H. A. Rodrigue and Clara Florence, intermarried with Dr. Horton, as his sole heirs and representatives, children and grandchildren of said Ann C. Rodrigue, who is deceased.

Fourth. Amelia Brisben died testate and provided inter alia as follows:

Sixth. "All the rest, residue and remainder of my estate, real, personal and mixed of whatever nature and kind soever, I give, devise and bequeath as follows: To my daughter, Esther B. Gowen, her heirs and assigns, the one-fourth part thereof absolutely in fee simple. To my son, Horace E. Brisben, his heirs and assigns, one-fourth part thereof absolutely in fee simple. To my son, Wm. M. Brisben, his heirs and assigns, one-fourth part thereof absolutely in fee simple. And the remaining one-fourth part thereof I give, devise and bequeath to the

Fidelity Insurance, Trust and Safe Deposit Company, of Phila-delphia, in trust, however, to pay out of the income thereof to my son, Hugh M. Brisben, during his life," etc. The terms and conditions of the trust not being material to this distribution, are not made part of this finding. ,A copy of which disposition in said last will and testament is hereto attached and made part of the evidence.

Fifth. Aline Rodrigue Gilbert died having made her last will and testament, wherein her husband, John Gilbert, is appointed the executor thereof, a copy of which is hereto attached.

Sixth. H. E. Brisben died on the 25th day of February, A. D. 1886, leaving a will, wherein he appointed William M. Brisben executor thereof; a copy of the material part is hereto attached.

Seventh. That the fund for distribution arises from rents and income from the estate devised in the will.

### CONTENTION OF PARTIES.

It is contended by Wm. H. M. Oram, Esq., counsel for Clara V. Ruthven, Florence V. Tisdall, John Gilbert, executor of E. Aline Gilbert, deceased, who were daughters of Ann C. Rodrigue, a daughter of Hugh Bellas, deceased, that the said Clara V. Ruthven, Florence V. Tisdall and the estate of E. Aline Gilbert, were entitled to receive twice as much of the fund as the sons of daughters of testator under the tenth clause of testator's will.

That this contention is sustained by a proper legal interpre-tation of the said tenth clause in the will, and that such inter-pretation or construction can be sustained under one or other of the three following propositions :

First. That the will gives an absolute fee coupled with a trust.

Second. Though there is no limitation over, it is in point of fact an executory devise.

Third. The word fee being first used was so used inadvertently, and the fee may be cut down by the subsequent words used in the will, which are mandatory and manifest, showing that it was the intention of the testator to cut the fee down to a less estate.

It is contended by E. W. Greenough and C. M. Clement,

Esqs., counsel for Hugh Bellas Rodrigue, Wm. M. Brisben, Horace Brisben's executor, Hugh Bellas Brisben's trustee, guardian of Aristide Rodrigue, Jr., and Eliza Florence Norton, that the daughters of the testator, Hugh Bellas, deceased, took an absolute fee under the said tenth clause of said will.

DISCUSSION.

Hugh Bellas, the testator, died on or about the 26th day of October, 1863, leaving to survive him three daughters, and the grandchildren hereinbefore set forth.  His will consists of eleven items and a codicil.  In the first item he gives a life estate, in a part of his real and personal estate, to his wife, using the words, " Rents, issues and profits," and in case the provision made was not sufficient to maintain her in comfort, his executors were to furnish out of the proceeds of sale of his personal or real estate sufficient means for that purpose.  In the second item he empowered his executors to " sell or lease the William Green tract of land," and to make a deed in fee simple ; but the tract was not to be sold for two years after his decease, unless for a certain price, and to be paid one fourth part in cash and the residue in annual payments, or in short periods.  In the third item he " devises in fee, etc., to C. to possess immediately after the death of my wife, if C. be then living," etc., a certain property.  In the fourth clause he " devises to F., my granddaughter, in fee to possess, if she be then living, immediately after the death of my wife."  In the fifth item he devises " in fee severally to my granddaughter, A., to possess immediately after the death of my wife, if then living, and to E., to possess, if then living, immediately after the death of my wife," giving to each by name a separate and distinct part by metes and bounds " to hold in severalty, with the right to use, in common, the well in the rear of the buildings ; " then follows a bequest of a specific sum to each, in case the devise should be defeated.  In the sixth clause he devises to his daughter A. " the proceeds of the contract of sale I have made with J., of my lot," etc., authorizing and directing his executors to make a deed of conveyance to J., the purchaser.  He also " gives and bequeaths to her, the said A., the one equal half part of the net rents, issues and profits " of a farm " to be paid to her, half yearly, until she receives her share of the proceeds

of sale " of the William Green tract, then said half part to cease
to be received by her, " but if the gift of the half part of said
proceeds should fail, then she is to receive semi-annually, in
lieu thereof, the sum of $100.00," until she shall receive " her
share of the proceeds of sale " of the William Green tract, and
no longer; but when she receives any part of her share from
said William Green tract, her share of the rents, issues and
profits of said semiannual payments shall be reduced by an
amount equal to the interest, at six per centum per annum, of
the part she shall have received of " said proceeds of sale " of
the William Green tract. In item eight he devises " in fee to
my three daughters, Eliza, Ann and Amelia, as tenants in com-
mon, to take effect immediately after the death of my wife, my
homestead where I reside, above described, devised to my wife
for life, with the appurtenances." In item ninth he devises " to
my granddaughter E., and sister F., as tenants in common, in
fee, to possess immediately after the death of my wife, if they,
or either of them, be then living," my lot, etc. (one of the
houses, the rent of which was given to his wife during life, in
first item of the will), but if from any cause this devise should
fail, and be defeated, then they were to be paid the sum of $50.00
in lieu thereof.

And then follows item tenth, heretofore given, upon which
this dispute has arisen.

In the eleventh item the executors, or a majority of them, are
given full power to lease, take possession, mortgage, make par-
tition, and sell, by either public or private sale, as they may
deem fit and judicious, all, or any part of testator's real or per-
sonal estate (except so far as the preceding would be inconsist-
ent with this power), and upon making sale, " to make deeds
. . . . for the property they sell, either with or without any
action, or authority of the orphans' court, as to them may seem
wise, and most beneficial to my descendants, and devisees, and
legatees, and in case it be necessary to raise money by sale of
real estate for the payment of debts, or other purpose, I direct
that my coal tracts in the name of ' William Green,' be last sold,
unless it can be sold at the price hereinbefore stated, and my
other real estate shall be sold for that purpose, in the order my
executors judge most advantageous, excluding the homestead
above mentioned, and if it happens that only one of the persons

named as executors should accept the office, or survive, then the power above given to sell real estate shall be executed by him, but only on the written request of my three daughters, or some two of them."

In the codicil he devises in fee to three trustees, and survivor of them, "all the real and personal property and estate to which my daughter, Ann C. Rodrigue, would be entitled to by my said last will, and these trustees, and each of them, are required to apply all the proceeds and profits thereof to her personal use, and support, and benefit, from time to time, as she may. have need and require, when by her demand in writing, for herself and her children, but not to be applied or used otherwise."

In construing a will every sentence and word must be considered in forming a judicial opinion upon it, and the intention of the testator from the words of a will taken together must govern its construction, and, the general intent of a will being ascertained, a particular inconsistent intent will be overlooked: Schott's Estate, 78 Pa. 40. I do not understand that it is contended by either side that there is a general intent, or scheme, in the will of the testator which controls, or governs the construction to be placed upon the tenth item. I have examined it carefully, and it seems to me, however, that there are expressions in the will which throw some light on the way in which the tenth item is to be construed. This will has been before the Supreme Court of this state twice, and portions of it passed upon by that tribunal. In the case of Brisben's Appeal, 70 Pa. 405, it is said by SHARSWOOD, J., in delivering the opinion of the court, "That the testator (Hugh Bellas) was a lawyer of distinguished learning and ability—one of the foremost men at the bar in northern Pennsylvania, and that his will was drawn with great care and skill, and is so clearly expressed, at least, as to the questions raised upon this record, as to leave no doubt as to his intention. Indeed, he has left construction no room for work, and for that reason it has not been found easy to frame any contention upon the subject." In the case first cited great importance was given to the distinction made by the testator in the use of the expressions, "proceeds of sale or lease," and "proceeds of sale," and "rents, issues and profits," and the court further said, "Technical words are always to be construed according to their technical meaning, unless there be some ex-

pression which clearly indicates a contrary intention; and surely this is a rule which ought to be applied to the will of a lawyer." In the will before us the testator devised life estates, estates in fee, estates in remainder, postponed the enjoyment of the same in some instances, provided for annuities in the event of a failure in a devise, and in each case with clearness of expression, so that it must be conceded that he was not only acquainted but familiar with the meaning of the technical expressions he used. In the sixth clause of the will he speaks of one of his devisees, who is named in the ·residuary clause as follows : " But when she receives any part of her share from said William Green tract," her share of the rents, issues and profits, etc., shall be reduced, etc., and, " of the part she shall have received of said proceeds of sale of the William Green tract," and again, "until she receives her share of the proceeds of sale of my said tract at the town of Shamokin, in the name of ' William Green,' " and again, in the eleventh item of the will, in the event of only one executor acting, the power of sale given " shall be executed by him, but only on the written request of my three daughters, or some two of them." These three daughters are the residuary legatees or devisees, and the special object of its bounty. And again, in the codicil he gives all the estate of one of these residuary legatees or devisees to trustees, and they "are required to apply all the proceeds and profits thereof to her personal use, and support, and benefit, from time to time, as she may have need and require, when by her demanded, in writing, for herself and her children, but not to be applied or used otherwise." It seems to the auditor that the fact that the testator has nowhere given the sons or daughters of the legatees or devisees under the residuary clause in the will a voice, or in any manner considered any claims they might have under that clause, if construed as contended by their counsel, but, on the contrary, gives to his legatees or devisees by name under that clause a fee, which carries with it full control of the estate devised, and in the codicil, in the case of one, stating clearly that she is to have it when by her demanded, in writing, for herself and children, is strongly persuasive, if not conclusive, that it was the intention of the testator to give to his daughters a fee as expressed in the technical language used, and that the language used subsequently is not sufficiently clear to cut down the fee to a life estate. Familiar

as he was with the technical language he used, and other clauses
in the will, showing clearly that he knew just what language to
use to create a life estate, a remainder and a fee, that it would
have been the most natural thing for him to have used language
that clearly would have indicated his intention to cut down
the fee already given, if that had been his intention.  I think
it amounts to no more than a mere request, and that it was his
intention to devise a fee, I think is clearly expressed in the codi-
cil.  It is true, the court has declared the trust a passive one,
and to that extent a failure to carry out the testator's intention,
so far as an active trust was intended; yet I think it is an
expression of the light in which the testator looked upon the
devise in the tenth item.  If a fee was not given, why attempt
to fetter it with a trust, with no disposition after the donee was
dead and the trust thereby ended?

In support of the first proposition, viz: "That the will gives
an absolute fee, coupled with a trust," the following cases are
cited: 2 Redfield on Wills, etc., pages 262, 297, 325, 413,
and notes 14, 416 and 426 ; Burt et al. v. Herron's Executors,
66 Pa. 400; Bowlby v. Thunder, 105 Pa. 173; Good et al. v.
Fichthorn et al., 144 Pa. 287.

The language used by the testator, viz: "And I request my
executors in dividing and apportioning the said residue to re-
quire of my said daughters, that their respective daughters shall
receive of my estate, as far as practicable, severally, about
double the amount that my said daughters' sons receive sever-
ally," it seems to me does not give anything to the daughters
or the sons of the donees mentioned, nor is there anything to
indicate that the donees had not the ultimate disposal of the
estate ; there is nothing to qualify the language previously used,
in which a fee is given to the donees.  If anything is intended,
it is a restraint upon the estate given.  It is a direction, that
the executors, if practicable, require the donees to do a certain
thing after having received the bounty of the testator.  Is it
not, to some extent at least, if not largely, discretionary with
the executor?  If so, that would be an end of the matter.

In the case of Bowlby v. Thunder, cited, it is said by the
court that " The general rule was accordingly held that words
expressive of desire or recommendation will not convert a de-
vise into a trust, unless it appear that the testator intended not

to commit the estate to the devisee, or its ultimate disposal to his discretion.

In the case of Burt v. Herron, 66 Pa. 400, it was held that while words of request in a will are commands as to the direct disposition of the estate, yet they are not so as to limitations on previously granted estates, unless it appear affirmatively that they were intended to be imperative.

In the case of Good et al. v. Fichthorn et al., 144 Pa. 287, it was held that: " The true test of the effect of language apparently at variance with other parts of the devise, is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given.    The former is always lawful; the latter, rarely, if ever.    The first, because the testator's intention is the governing consideration in the construction and carrying out of the will.    The second, because even a clear intention of the testator cannot be permitted to contravene the settled rules of law depriving an estate of its essential legal attributes."    Whilst the cases relied upon recognize, and others clearly establish, the principle contended for in the first proposition of counsel for contestants, yet some of them are adversely decided, for the reason that the facts do not bring them within the principles of law laid down, and it seems to me that just here is where the trouble is in the case at bar.    The facts do not bring it within the principle sought to be applied to it.    Redfield on Wills is standard authority in America on many subjects connected with wills, but on the question at issue it is not, for the reason that the rule has not been adopted here.

In the case of Pennock's Estate, 20 Pa. 268, it was held that the English rule relating to the doctrine of trusts, created by language expressive of desire, recommendation and confidence, had not been adopted here, and is fading away in England, and the general rule as laid down in Burt v. Herron, supra, was followed.

And in the case of Hopkins v. Glunt, 111 Pa. 287, whilst it was held that " All expressions of a testator indicative of a wish or will are commands," yet it was also said that " it was different where, having made a disposition, the testator expresses a desire that the devisee should make a certain use of his bounty."

In support of the second proposition, viz: "Though there be no limitation over, yet the devise can be sustained as an executory devise," the following authorities were cited: Sheets' Appeal, 52 Pa. 257; Fox's Appeal, 99 Pa. 384; Oyster v. Knull, 137 Pa. 448.

It seems to the auditor that the language of the devise does not bring it within the definition of an executory devise. A fee or other less estate has not been given after a fee. There is no limitation over to any one. If there is, in what proposition is it given? The whole estate has been given in fee; but I cannot construe the language subsequently used into a limitation over. When is it to commence? On what contingency does it rest? None of these requisites is given. Have the donees not power to convey? Would their deed not have been good? If so, then upon their death, there being no disposition, it would descend to the heirs, under the interstate laws.

In the case of Sheets' Appeal, 52 Pa. 257, the testator gave all his estate real and personal to his children share and share alike, ordering his executor to invest it so far as converted into money and pay the interest, etc., and the rents, etc., to his children annually during life, and after the death of any child, the principal to be paid over to such child's children, followed by the proviso that if any of his said children should die without issue, the share, purpart, or dividend of such heir shall be equally divided amongst the survivors or the children of the survivors of such survivor. It is true it was held that a subsequent provision may define the estate given, and show what might be a fee was intended to be a less right, but in the same breath it was also said that such provision must unequivocally show that the testator meant it to have that effect. Here the language was such as to conclusively show that there was an ultimate limitation over in default of issue of the children, and that the language used unequivocally showed that the testator meant to restrict the fee given to a less estate, and hence it was held to take effect as an executory devise.

In the case of Fox's Appeal, 99 Pa. 384, the testator died seized of certain real estate, providing by his will, inter alia, "I do give and bequeath to my beloved wife, E., all my real and personal estate, she at no time to give or bequeath any portion of said estate out of my family, as at her decease, I wish my

estate which remains to go to my nephews and nieces which may be living at that time." Testator then bequeathed as a legacy to his wife's niece the interest of $1,000, which sum was to be invested on a mortgage, and to be given to said niece on said wife's death. It was held that the effect of the will was to vest in testator's wife a life estate in the realty, with remainder over to testator's nephews and nieces in fee. The court however says that testator had added a prohibition of any gift or bequest out of his family which, if a fee had been expressly given, might have been considered a provision in restraint of the power of alienation, and therefore void. In this case the language of the testator clearly indicated that only a life estate was given to the wife, and clearly set forth the limitation over.

In the case of Oyster v. Knull, 137 Pa. 448, the testator gave a farm to the donee, "for his support," thereby indicating that a life estate was intended, and further declared "if he should be spared to have family, I desire the above estate to go to the use of his children." The court held that the word "desire" thus employed by the testator was not merely precatory, but that it was mandatory, as if he had used the words "I will," or "I order and direct." And then held that the clause in question might be read thus, "I will that the above estate shall go to the use of his children," coupling that with the preceding words of same clause, "for his support." The interest of the first taker would appear to be limited to a life estate.

In none of the cases cited was a fee given, in technical language, and in each of them the language used unequivocally showed that the testator intended to give a life estate to the donee, with a remainder over.

In support of the third proposition, viz: "The word fee being first used was so used inadvertently, and the fee may be cut down by the subsequent words used in the will, which are mandatory and manifest, showing that it was the intention of the testator to cut down the fee to a less estate," the following cases were cited, in addition to those already cited; some of the cases heretofore cited are also intended to apply to this proposition: Lewis's Estate, 3 Wharton, 162; Schott's Estate, 78 Pa. 40; Urich's Appeal, 86 Pa. 386; Good v. Fichthorn, 144 Pa. 287; Bowlby v. Thunder, 105 Pa. 173; German v. German, 27 Pa. 116; Middleswarth's Adm'r v. Blackmore et al., 74 Pa. 414.

It seems to the auditor that this is the point upon which this case turns. That the rule of law is as is contended for in this proposition, is well settled. Does the language of the will bring it within that rule? Bearing in mind the fact that the testator was a distinguished lawyer, and that he made use of phrases and technical terms throughout his will, which conclusively show that he was familiar with the nicer distinctions of the law, he must be presumed to fully understand the technical terms he made use of in his will. If he did, and that must be conceded, what did he mean by the subsequent words, made use of after the giving of the fee in the tenth item? There does not seem to be a general scheme in the will by which there was to be a fixed period after the happening of some event, or a period of time after which this residuary estate was to be distributed except that necessarily required for the payment of the debts, and the period of the death of the widow. There was no provision for the application of the income of this residue to the donees (except as provided for one of them in his codicil) during their lives; no provision that they should not dispose of it while they lived, and no specific disposition made of it after the death of the donees. The language used seems to me to be the expression of a desire upon the part of the testator that the donees should make a certain use of his bounty. It is contended that this request is mandatory, and amounts to a devise. This would be so if made use of in a direct devise, but the rule is different when having made a disposition he expresses a desire that the donee should make a certain use of his bounty: Burt v. Herrons, 66 Pa. 400; Hopkins v. Glunt, 111 Pa. 287.

It is also contended that the intent of the testator must override technicalities. This is conceded. It must, however, clearly appear by some expression that the intent of the testator was contrary to the technical words used, and the true test is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective; the latter rarely, if ever (Good v. Fichthorn, 144 Pa. 287). The technical words give an estate in fee to the donees, and the subsequent language used does not seem to me to be in conflict with that intent. There is not a word

which indicates a qualification of the former words, or changes the absolute fee into a lesser estate.

It is also contended that the last clause must take precedence of the first clause in the will.   This is true where the clauses are totally inconsistent, or repugnant and incapable of being reconciled.   I cannot, however, say that the last clause of the devise is in law inconsistent with or repugnant to the first clause.

It is not a different disposition.   It is incomplete as such. It seems to me to be an attempt to direct the donee how to use his bounty, which the law forbids.    This brings me to the main question : Did the testator intend to cut down the fee to a smaller estate?   If he did, then the donees had only a life estate, and the fund would have to be distributed accordingly, and the daughters of the donees would receive twice as much as the sons.

The law presumes that the testator did not intend to cut down the estate of the donee to a smaller estate : Good v. Fichthorn, 144 Pa. 287.

In the case of Middleswarth's Adm'r v. Blackmore, 74 Pa. 414, there was a provision: " That in case the donee should die without leaving issue, it was the will of the testator that the real estate bequeathed to the donee should be sold," and a further disposition was made of it.

In the case of Urich's Appeal, Stoudt's Estate, 86 Pa. 386, it was said, " That the will was not written by a learned lawyer or skilled conveyancer, hence the language was not so conclusive of the intent."   None of the devisees were to have the right to assign or sell the land bequeathed to them, nor the right to incumber it, but the land was to remain free for their children and their heirs.   " And they, the devisees, shall have the use, income and profit of the said lands and farms during their lifetime."   And then followed a power of appointment by will, to take effect after their decease.   The language of the last two cases clearly brought them within the rule sought to be applied to the case at bar.

In the case of Good v. Fichthorn, 144 Pa. 287, the testator gave an absolute fee, with express powers to consume or to convey, and did not himself devise the unconsumed residue, but requested his wife, the donee, to do so, in words ordinarily importing demand, but so used as to indicate only an intent not

to reduce the estate previously given, but to control one of its incidents, and it was therefore unenforceable.    The language was, "I do hereby enjoin and direct her (the donee) to make and publish her last will, etc.; that after her decease all the rest and residue not consumed, used or sold by her, shall be divided," the one half among his, the other half among her brothers and sisters.    It was held that the donee took a fee. That not a word indicated an intention to qualify or change the absolute devise which he had made to her.    It was, also, said that where a testator gives an estate in fee simple, and subsequent parts of the will unequivocally show that he means the devisee to take a less estate only, the prior devise is to be restricted accordingly, but such restriction will not be affected by words importing merely an intent or desire of the testator to withhold legal incidents of the estate already given.    This case was decided adversely to the principle contended for, because the facts failed to bring it within the rule.    It seems to me that this case is a much stronger one than the case at bar, and if the language used did not unequivocally show that the testator meant to cut down the fee to a less estate, then certainly the language used by the testator in the case at bar could not be held to cut down the fee previously given to a smaller or lesser estate.    It certainly does not unequivocally appear that he did intend to cut down the fee.    I cannot say that there is anything in the will, or the tenth clause, that would lead me to think, much less to conclude, that the word fee, in the first part of the tenth item of the will, was inadvertently used, nor can I see how the clause could be transposed so as to change the meaning, or effect, of the technical language used.    After a careful examination of the authorities, I have arrived at a different opinion from that which I entertained from my first impression of it.

On the contrary, we are cited to the following cases: Harrison v. Brolaskey, 20 Pa. 299; Faries' App., 23 Pa. 29; Dubs v. Dubs, 31 Pa. 149; Rank v. Rank, 120 Pa. 191; Rodrigue's App., 22 W. N. C. 358; Board of Foreign Missions v. Culp, Atl. Rep., vol. 25, No. 3, p. 117; s. c., 151 Pa. 467; Boyle v. Boyle, 31 W. N. C. 453; s. c., 152 Pa. 108.

Harrison v. Brolaskey, 20 Pa. 299; Faries' App., 23 Pa. 29; Dubs v. Dubs, 31 Pa. 149, and Rank v. Rank, 120 Pa. 191, were

cases where separate uses had been created of real and personal property, and it was held that where a title in fee simple, legal or equitable, was given, all expressions in it attempting to set aside the statutory order of descent, without providing a different one, must go for nothing, and that it was folly for one to convey an absolute estate and at the same time attempt to impose conditions. The two things are inconsistent, and cannot stand together. In the case of the Board of Foreign Missions v. Culp, Atlantic Reporter, vol. 25, No. 3, page 117, the doctrine that precatory trusts do not prevail in Pennsylvania was reaffirmed. In this case testatrix gave E. an estate in a farm for her own personal benefit. Following, was an expression of desire, that " after the decease " of E., testatrix's interest in the farm, and the accrued profits, should be appropriated to " Foreign Missionary Work."

It was held that the latter clause was testamentary, rather than precatory, and that E. took only a life estate; that estate given to her was not affected by the fact that the devise over lapsed. If the testator intended in his will to cut down the fee already given to a life estate, but failed to express that intent, the fee is not affected.

In the case of Rodrigue's App:, 22 W. N. C. 358, this will was before the Supreme Court a second time, and whilst it is true that there are different parties to this issue, and the direct question was upon the trust attempted to be created, yet in determining the question then raised and at issue, the court practically passed upon the question now raised and at issue. Whilst it is true that the question decided was as to the validity of the trust, yet incidental to that question was the question as to what estate the donee took under the tenth clause of the will, in connection with the attempted creation of a trust by the codicil. The donee in that contest stood in the same position as to the estate she took, as the donees in this contest. It was there held that the trust was passive, and the cestui que trust was entitled to a conveyance of the property, because under the tenth clause in the will she took an absolute estate; in other words, a fee.

It is true, the parties raising the question now are not bound by that decision; yet, I think that the court will decide this question now as they decided it then. The court, in rendering the decision, say that there is "no limitation over, either of

income or of principal of the estate, to any person.  There are no other estates or interests to be preserved." No ultimate purpose of any kind, requiring the continuance of the trust, is expressed in the will, or can it be implied from its terms, except the mere payment of the income to the cestui que trust.

### CONCLUSIONS OF LAW.

The auditor finds the following conclusions of law:

First. That by the tenth clause of the will the daughters of the testator took an absolute estate in fee simple, and that the language used by the testator subsequent to the devise of the fee amounts in law to a mere expression of desire as to the way this bounty is to be used by the donees, and is therefore inoperative.

Second. That the tenth clause cannot be sustained as an executory devise, giving either a life estate or an estate in fee to the donees, and a devise over to the daughters and sons of the donees.

Third. That the tenth clause cannot be sustained as giving a fee to the donees, coupled with a trust in favor of the daughters and sons of the donees.

Fourth. That the technical word fee in the first part of the tenth clause cannot, in law, be held to have been inadvertently used, and that the language used subsequently to the giving of the fee, even though used in the same clause and connection, does not cut down the fee to a smaller or lesser estate, and that the words so used and so employed are not mandatory, and do not manifestly show that it was the intention of the testator to cut the fee, already given, down to a smaller or lesser estate.

Fifth. That the donees and their heirs are entitled to the fund, in accordance with the intestate laws, where the donees died intestate, and in accordance with the disposition made of the estate in their last wills and testaments where they died testate.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Frank R. Savidge*, for appellant.—The importance must

always be given to the intention of a testator: Colton v. Colton, 127 U. S. 300; Hopkins v. Glunt, 111 Pa. 287; Schott's Est., 78 Pa. 40; Kennedy v. Kennedy, 159 Pa. 327; Redding v. Rice, 37 W. N. C. 195; Warner v. Bates, 98 Mass. 274.

Mr. Bellas' motives and intentions were to provide principally for his widow, daughters and his granddaughters as well: Brisben's App., 70 Pa. 405; Lewis's Est., 3 Wharton, 162; German v. German, 27 Pa. 116; Pennock's Est., 20 Pa. 268; Coates' App., 2 Pa. 129.

No form of words is necessary to create a trust, and it may be properly created by words of recommendation: 1 Redfield on Wills, sec. 174; Jarman on Wills, sec. 355; Bernard v. Marshall, 1 Johns. Ch. 287; Hess v. Singler, 114 Mass. 59; Board of Foreign Missions of U. P. Church v. Culp, 151 Pa. 467; Williams v. Williams, 1 Sim. N. S. 358; Hill on Trustees, 74; Taylor v. Bell, 158 Pa. 651; Burt v. Herron, 66 Pa. 400; Bowlby v. Thunder, 105 Pa. 173.

Testator may restrain the generality of a devise by subsequent expressions and convert that which would otherwise have been a fee simple into an inferior interest; and more frequently in this mode than in any other is a particular estate given: Sheets' Est., 52 Pa. 257; Good v. Fichthorn, 144 Pa. 287; Shalters v. Ladd, 163 Pa. 509.

The generality of a devise may be cut down, and more frequently in this than any other mode is a particular estate given: Haldeman v. Haldeman, 40 Pa. 34; Middleswarth v. Blackmore, 74 Pa. 414; Good v. Fichthorn, 144 Pa. 287.

*E. W. Greenough* and *C. M. Clement*, for appellee, were not heard, but cited in their printed brief: Good v. Fichthorn, 144 Pa. 287; Boyle v. Boyle, 152 Pa. 108; Cressler's Est., 161 Pa. 427; Evans v. Smith, 166 Pa. 625; Spaulding v. Ferguson, 158 Pa. 219.

PER CURIAM, June 3, 1896:

All that need be said in relation to the questions involved in this appeal will be found in the learned auditor's report which was virtually adopted by the court below and made the basis of the decree. There appears to be nothing in any of the assignments of error that requires further discussion. Neither of them is sustained. The decree is affirmed on the auditor's report and the appeal is dismissed at appellant's cost.